IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER THOMASON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-363-RAW-SPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Christopher Thomason requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty-five years old at the time of the most recent administrative hearing (Tr. 67). He has a high school equivalent education and has worked as a lubrication technician, delivery driver, and well service floor worker (Tr. 69, 98-99). The claimant alleges that he has been unable to work since an amended onset date of May 1, 2016, due to cerebral palsy, arthritis, a back injury, neck pain, posttraumatic stress disorder ("PTSD"), anxiety, and chronic obstructive pulmonary disease ("COPD") (Tr. 404, 498).

### Procedural History

On December 2, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 382-92). His applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 18, 2017 (Tr. 212-25). The Appeals Council remanded the case on August 6, 2018 (Tr. 233-35). On remand, ALJ Michael Mannes conducted a second administrative hearing and determined the claimant was not disabled in a written opinion dated January 28, 2019 (Tr. 35-54). The Appeals Council denied review, so the ALJ's January 2019 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with frequent balancing, kneeling, and crouching; occasional stooping, climbing ramps or stairs, reaching overhead with the left extremity, and using foot controls; and never crawling or climbing ladders, ropes, or scaffolds (Tr. 43). As to environmental limitations, the ALJ found the claimant must avoid all exposure to unprotected heights and must avoid concentrated exposure to extreme cold, extreme heat, vibration, operating motor vehicles, dust, odors, fumes, and pulmonary irritants (Tr. 43). The ALJ further found the claimant could understand, remember, and carry out simple and some detailed, but not complex, instructions; could occasionally interact with supervisors and co-workers and incidentally interact with the general public in performance of work-related tasks; could respond appropriately to gradual and infrequent changes in a work setting; and that time off task could be accommodated by normal work breaks (Tr. 43). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, electrical accessory assembler, inspector hand packager, and small products assembler (Tr. 52-54).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinions of Dr. Chris Sudduth, who performed a consultative physical examination, and Dr. Russell Pella, who performed a consultative mental status examination; (ii) pose a

hypothetical question to the vocational expert ("VE") containing all of his limitations; and (iii) properly evaluate whether his mental impairments met the requirements of Appendix 1, Part 404, Subpart P ("the Listings"). The undersigned Magistrate Judge agrees that the ALJ erred in evaluating Dr. Pella's consultative mental status examination, and finds further error in the ALJ's analysis of the claimant's severe intellectual disorder when forming the RFC.

The ALJ found the claimant's cerebral palsy, anxiety disorders, chronic obstructive pulmonary disorder ("COPD"), and intellectual disorder were severe impairments, but that his obesity was nonsevere (Tr. 39). The medical records related to the claimant's mental impairments reveal that he established care with Dr. Jonathan Doyle on August 26, 2016 for anxiety, pain, and difficulty sleeping (Tr. 747-51). The claimant reported that he did not finish school because he could not be around people, thinks people stare and talk about him when in public, and becomes paranoid, nervous, and "sweaty" after being inside a store for ten minutes (Tr. 747-48). Dr. Doyle's mental status examination was normal (Tr. 750). As to the claimant's cognition, Dr. Doyle noted the claimant reported no cognitive impairment, was estimated to have average intelligence, and had good impulse control, insight, and judgment (Tr. 751). Dr. Doyle indicated the claimant had symptoms of depression and anxiety and came near a diagnosis of posttraumatic stress disorder ("PTSD") but did not meet the full diagnostic criteria (Tr. 751). He diagnosed the claimant with anxiety, major depressive disorder, and PTSD (presumptive) (Tr. 751). The claimant's symptoms appeared to wax and wane, but Dr. Doyle's mental status and cognition examinations were normal (Tr. 753-75).

On March 3, 2016, Dr. Todd Graybill performed a consultative mental status examination of the claimant (Tr. 627-28). He indicated the claimant could read, write, and perform simple arithmetic calculations, and could understand, retain, and follow simple instructions (Tr. 627). Dr. Graybill administered the Wechsler Adult Intelligence Scale-III, the results of which revealed a full-scale IQ of 64 and placed the claimant in the extremely low range of intellectual functioning (Tr. 627).

Dr. Pella completed a consultative mental status examination of the claimant on October 10, 2018 (Tr. 895-901). He estimated that the claimant's insight and judgment were limited and that his intellectual level was borderline to low average (Tr. 900). Dr. Pella found that the claimant was mildly limited in his ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions (Tr. 895). Additionally, Dr. Pella indicated that the claimant's "history of challenged frustration tolerance and cyclical mood episodes would adversely influence his ability to maintain the requisite pace and persistence required for adapting to mild-moderate work pressures." (Tr. 900). He further found the claimant was moderately limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting, and was mildly limited in his ability to interact appropriately with supervisors, co-workers, and the public (Tr. 896). In support of his assessment, Dr. Pella noted the claimant's personality disorder, cyclic mood disorder, paranoid ideation, and social anxiety (Tr. 896).

On January 30, 2017, state agency psychologist James Sturgis, Ph.D. completed a mental RFC assessment wherein he found the claimant was markedly limited in his ability

to understand, remember, and carry out detailed instructions and to interact appropriately with the general public, and was moderately limited in his ability to maintain attention and concentration for extended periods and respond appropriately to changes in the work setting (Tr. 161-62). Dr. Sturgis explained that the claimant could perform simple tasks, interact with peers and supervisors on a very superficial, work basis and adapt to a work environment consistent with his RFC, but could not interact with the general public (Tr. 614-27). On review, state agency psychologist Burnard Pearce, Ph.D. affirmed Dr. Sturgis' findings regarding the severity of the claimant's limitations, but additionally explained that he could understand, remember, and carry out simple and some, but not all, more detailed instructions under routine supervision (Tr. 190-92).

    In his written opinion, the ALJ summarized the hearing testimony and the medical records. At step three, the ALJ concluded that the claimant's impairments did not meet or medically equal any listing (Tr. 39-43). In making this conclusion, the ALJ found the claimant was mildly limited in his ability to understand, remember, or apply information and to adapt or manage himself and was moderately limited in his ability to interact with others and to concentrate, persist, or maintain pace (Tr. 40). As to Listing 12.05(B) specifically, the ALJ noted the claimant's March 2016 full scale IQ score of 64, but ultimately concluded that he did not meet the requirements of this Listing. In discussing the opinion evidence at step four, the ALJ gave Dr. Pella's consultative opinion great weight, finding it was consistent with, *inter alia,* Dr. Doyle's records and his conservative treatment (Tr. 50). The ALJ also gave great weight to Dr. Graybill's opinion because it was consistent with Dr. Doyle's treatment notes (Tr. 51). Similarly, he gave great weight

to the opinions of the state agency psychologists because they were consistent with the record as a whole and Dr. Doyle's treatment notes (Tr. 51).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." [2] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ adopted Dr. Pella's opinion regarding the claimant's limitations in his ability to understand, remember, and carry out complex instructions, interact with supervisors, co-workers, and the general public, and respond to changes in a routine work

---

[2] The claimant filed his application for Title II and Title XVI benefits on December 2, 2016. The undersigned Magistrate Judge recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.

setting, but failed to explain how he accounted for his limitations regarding the claimant's ability to maintain the requisite pace and persistence required for adapting to mild-moderate work pressures or articulate any reasons for rejecting them (Tr. 43, 895-901). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Pella's findings according to the appropriate standards, the ALJ should have explained why he found certain aspects of Dr. Pella's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others."). This was a significant omission because the limitations implicate the claimant's ability to tolerate work pressure and stress, and call into question his ability to perform the RFC as assigned.

    Although the ALJ did not err in determining that the claimant's impairments did not meet Listing 12.05 at step three, the undersigned Magistrate Judge nevertheless finds the ALJ *did err* at step four by failing to account for the claimant's unchallenged IQ of 64,

which is directly related to his severe impairment of intellectual disorder. This supports the conclusion, above, that the ALJ failed to properly assess the claimant's RFC in accounting for *all* of his limitations. "The ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Although the ALJ included psychologically-based limitations in the RFC and recited the evidence related to the claimant's mental impairments, the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts for the claimant's severe intellectual disorder. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely

summarizes" much of the relevant evidence, states that he considered the entire record, "and then announces his decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) [internal quotation marks omitted]. The ALJ's conclusory findings as to the claimant's intellectual disorder thus require remand for the ALJ to explain his decision.

Because the ALJ failed to properly evaluate Dr. Pella's consultative opinion, and further failed to provide a narrative discussion of how the evidence supports the RFC, the Commissioner's decision should be reversed and the case remanded to the ALJ for a proper analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 4th day of March, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**